# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| KEVIN ROBINSON | ) | |
| STEPHANIE ROBINSON | ) | Number 05-4069 |
| (Chapter 13 Case 05-43319) | ) | |
| | ) | |
| *Debtors* | ) | |
| | ) | |
| KEVIN ROBINSON | ) | |
| STEPHANIE ROBINSON | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| COUNTRYWIDE HOME LOANS | ) | |
| | ) | |
| *Defendant* | ) | |

FILED at 8 O'clock & 30 min A M
Date 12/29/05
United States Bankruptcy Court
Savannah, Georgia

## ORDER ON DEBTORS' MOTION FOR PRELIMINARY INJUNCTION AND RESTRAINING ORDER

The Debtors filed a Chapter 13 case on November 30, 2005. Within the past twelve months, the Debtors had two other bankruptcy cases pending, both of which were dismissed. As a result, according to the provisions of 11 U.S.C. § 362(c)(4)(A)(i),[1] there is no automatic stay in effect as a result of the filing of this third case. The Debtors' residence was scheduled for a nonjudicial foreclosure on Tuesday, December 6, 2005. Accordingly,

---

[1] Hereinafter, all section references are to Title 11 of the United State Code.

AO 72A
(Rev. 8/82)

Case:05-04069-LWD Doc#:6 Filed:12/29/05 Entered:12/29/05 09:56:51 Page:2 of 12

they filed this adversary proceeding seeking a preliminary injunction and restraining order to impose a stay in this case and to restrain and enjoin this scheduled foreclosure. An evidentiary hearing was conducted on December 5, 2005. At the conclusion of that hearing, I stated that I would rule on the matter prior to 11:00 a.m. on December 6, 2005, and directed that Countrywide Home Loans ("Countrywide") was not to commence its foreclosure prior to either 11:00 a.m. or telephonic notification of the Court's ruling. On Tuesday, December 6, 2005, I entered a brief order denying the relief and permitted the foreclosure to proceed. I enter these findings of fact and conclusions of law to further amplify that ruling.

The Debtors' first case was filed in November 2002 at a time when Mr. Robinson revealed an income of $2,133.92 per month and default on his mortgage loan to Countrywide in the amount of $4,015.06. Mr. Robinson had been working with Chemtall/SNF Holding Company for eight years at that time and had steady income. His case proceeded in reasonably satisfactory fashion until he became ill, underwent surgery, and lost his job. The case was dismissed on December 23, 2004, upon a motion of the Chapter 13 Trustee asserting that the case was in default. Exhibit C-1.

The Debtors' second case was filed on January 6, 2005. It revealed the Debtors' combined net income was over $4,700.00 per month, which derived from Mr. Robinson's "lawn care service" and Mrs. Robinson's "child care service." However, this income was a mere projection, and the projections never proved to be realistic. Mr. Robinson acknowledged that he earned little if any income from the lawn care service and

that Mrs. Robinson's child care business was not successful because of the difficulties they had operating a business without prior experience, as well as in obtaining clients and collecting the monthly fees for child care services.

When the second case was filed, Countrywide's pre-petition arrearage claim had grown to $8,302.62 as a result of post-petition mortgage defaults by the Debtors during the first case. The Debtors soon became delinquent in payments to the Chapter 13 Trustee in the second case, and an order dismissing it was filed on October 12, 2005.

The third and present case was filed on November 30, 2005. Mr. Robinson now reveals net income of $2,390.00 per month consisting of regular income from a job that he has held since April 2005 with the Department of Civil Defense, as well as projected overtime of $450.00 per month, and a VA disability check. Mrs. Robinson shows $600.00 in estimated income from a part-time job. Because they now have a net income of $2,990.00 per month, arguably maintain steady employment, and show an increase in income since the filing of the first case, the Debtors claim that a substantial change in circumstances has occurred so that this third case should be permitted to proceed and a stay should be imposed to stop the foreclosure of their home. The pre-petition arrearage owing to Countrywide has now increased from $8,300.00 in case two to $9,828.20 as a result of post-petition defaults on the mortgage payments during case two. As a result, the Debtors remain twenty-one months past due in their mortgage payments to Countrywide. *See* Exhibits C-2 & C-3.

Countrywide contends that, although it does not doubt the sincerity of the Debtors in bringing this case given their current income and employment, the Court's analysis in this matter should take into account the Debtors' performance in all three cases, be viewed under long-recognized standards of good faith, and that there has been no substantial change in circumstances to overcome the bad faith presumption in the Code.

Having considered the arguments of counsel and the interpretation of provisions of BAPCPA, coupled with pre-BAPCPA precedent on good faith, I conclude that the Debtors have not made a sufficient showing to obtain this injunctive relief. According to Section 362(c)(4)(A):

> (i) if a single or joint case is filed by or against a debtor who is an individual under this title, and if 2 or more single or joint cases of the debtor were pending within the previous year but were dismissed . . . the stay under subsection (a) shall not go into effect upon the filing of the later case; and
>
> (ii) on request of a party in interest, the court shall promptly enter an order confirming that no stay is in effect.

Because the Debtors' first bankruptcy case was dismissed on December 23, 2004 and their second bankruptcy case was dismissed on October 12, 2005, two or more previous cases were pending and dismissed within the critical one-year period. Therefore, it is undisputed that Section 362(c)(4)(A) has been triggered and that there was no automatic stay in place upon the filing of this bankruptcy case.

However, the Code permits the imposition of a stay when certain circumstances are present. Within 30 days of the filing of the latest case, a party in interest may ask the court to order the automatic stay to take effect "after notice and a hearing, *only* if the party in interest *demonstrates* that the filing of the later case is in good faith as to the creditors to be stayed." 11 U.S.C. § 362(c)(4)(B)(emphasis added). When, as in this case, there have been two prior cases dismissed within one year, a debtor must overcome a statutory presumption that the latest case was not filed in good faith. This presumption may be rebutted by a debtor but only by clear and convincing evidence to the contrary. 11 U.S.C. § 362(c)(4)(D). As for this presumption under BAPCPA, "it is as though evidence has already been presented establishing that the case was not filed in good faith. If no further evidence is presented by the Debtor, the only evidence the Court has is the presumption." In re Montoya, 2005 WL 3160532, *4 (Bankr. D. Utah 2005).

This order will address the evidentiary burden the Debtors must carry to gain the benefit of a stay. Because the presumption has arisen that the Debtors did not file the present bankruptcy case in good faith, the burden is now on the Debtors to affirmatively *demonstrate* by clear and convincing evidence that the present case was filed in good faith. This showing is mandatory once the fact of two prior dismissals is established.

I agree with the court in In re Montoya that the significant body of precedent guiding the "good faith" inquiry in pre-BAPCPA cases is controlling. *See* 2005 WL 3160532, at *5. In In re Kitchens, 702 F.2d 885, 888-89 (11th Cir. 1983), the Eleventh

Circuit Court of Appeals determined that the following factors may be considered in determining a debtor's good faith:

1. The amount of the debtor's income from all sources;

2. The living expenses of the debtor and his dependents;

3. The amount of attorney's fees;

4. The probable or expected duration of the debtor's Chapter 13 plan;

5. The motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6. The debtor's degree of effort;

7. The debtor's ability to earn and the likelihood of fluctuation in his earnings;

8. Special circumstances such as inordinate medical expense;

9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;

10. The circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;

11. The burden which the plan's administration would place on the trustee.

In reviewing <u>Kitchens</u>, it has been said that the "guiding principle is whether the debtor proposed his Chapter 13 plan with a sincere intent to repay, to the best of his ability, the

claims of his creditors or, instead, whether the Chapter 13 filing was an *attempt to defer or avoid the claims of legitimate creditors*." In re Vick, 327 B.R. 477, 486 (Bankr. M.D. Fla. 2005)(emphasis added).

Under Section 362(c)(4)(B), the Debtors must demonstrate that this latest case was filed in good faith. This provision represents a departure from current practice in which a debtor's case can be determined to be in good faith, absent objection, without receiving any affirmative evidence of good faith. *See* Fed. R. Bankr. Proc. 3015(f). The new provision requires debtors to make an affirmative showing of good faith in refiled cases if they request an order extending or imposing a stay or proceedings. Furthermore, that showing must be made much earlier in the case, within 30 days of filing, rather than potentially weeks or months later at confirmation, as in pre-BAPCPA practice.

While the ordinary burden of proof in bankruptcy is a preponderance of the evidence, Section 362(c)(4)(D) raises the burden to the higher "clear and convincing" standard if, in general terms:

>   (i)(I)   The debtor had two or more cases pending within the prior one-year period;
>
>   (II)     Within the one-year period, a debtor's previous case was dismissed because the debtor failed to file certain documents, provide adequate protection, or perform the terms of a confirmed plan; or
>
>   (III)    There has not been a substantial change in the debtor's financial or personal affairs since the most

>>previous case or any other reason to conclude that the present case will not be completed; or
>
>>(ii)  If a motion for relief had been pending or granted in the prior case with respect to a specific creditor.

The issue is the effect of the language in Sections 362(c)(4)(D)(i)(II), (i)(III), and (ii). When Debtors filed this case, no stay went into effect under Section 362(c)(4)(A) because of the two prior cases. To impose a stay, the Debtors must demonstrate good faith under Section 362(c)(4)(B). Because of the two prior cases, (i)(I) automatically elevates the burden of proof of good faith to the "clear and convincing" standard. If all that (i)(II), (i)(III), and (ii) accomplish is to similarly raise the burden of proof to "clear and convincing," what purpose do they serve since that burden is already in place? Since (i)(I) automatically raises a debtor's burden to the higher "clear and convincing" standard in every case where there were two prior cases within a year, and there is no foreseeable fact pattern where the (4)(A)(i) exception to the automatic stay in case three would not also trigger (i)(I), is there any way to interpret (i)(II), (i)(III), and (ii) as having any meaning?

A cardinal rule of construction is that a court should avoid an interpretation of a statute that renders its language superfluous. Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 117 L.E.2d 391 (1992). Stated another way, are the provisions of (i)(II), (i)(III) and (ii) superfluous, do they impose another evidentiary burden on a debtor beyond the heightened burden of proof of good faith already in place in (i)(I), or do they serve some other purpose?

Charged as I am with the duty of finding all the Code provisions non-superfluous and unable to conclude that they require the debtor to both prove good faith *and* make a separate showing, for example, of substantial change "by clear and convincing evidence," I conclude that Congress must have believed that it was imposing the higher evidentiary standard in cases not covered by (i)(I) but which fell into the fact patterns of (i)(II), (i)(III), and (ii). To give effect to that intent, I hold that, to the extent that binding precedent does not require consideration of the specific fact patterns enumerated in these subsections as part of the "totality of circumstances" test of good faith, post-BAPCPA courts should consider those Congressionally-designated fact patterns in the "totality" analysis. Under Kitchens, factors 5,[2] 7,[3] 9,[4] and 10[5] touch on similar concerns, but are more general in content than the language of the new statute. To accord meaning to the text of the amendments, I hold that the factors they specifically identify should be incorporated into existing "totality of circumstances" factors utilized by courts in determining a debtor's good faith. However, they need not be separately negated by clear and convincing evidence. That burden is applicable only to the "totality" analysis in searching for good faith, but not separately to each subsection.

### Good Faith

A review of the Debtors' performance in their two prior cases and the

---

[2] Compare with (i)(II).

[3] Compare with (i)(III).

[4] Compare with (ii).

[5] Compare with (ii).

projections for their third case reveals that they have not overcome the statutory presumption that this case was not filed in good faith. The facts supporting this conclusion include the following: (a) There was a pattern of default in the Debtors' payments to the Trustee in each of their two prior cases; (b) There was a pattern of failure to make direct mortgage payments in each of their two prior cases; (c) The Debtors' actions prompted their original pre-petition mortgage debt to pyramid from roughly $4,000.00 to $9,300.00; and (d) The Debtors are twenty-one months in arrears on their mortgage payments. This conduct does not demonstrate an intent to make a genuine effort at rehabilitation under Chapter 13 but an attempt to frustrate and avoid the collection of a legitimate debt held by Countrywide. *See* In re McGovern, 297 B.R. 650, 658 (S.D. Fla. 2003)("[A] Chapter 13 'good faith' analysis still properly entails examination of the type of underlying debt, the circumstances surrounding its creation, and *any pre-petition conduct of the debtor aimed at avoiding or thwarting the debt*, especially as these factors may circumstantially reflect the debtor's motivation, and ultimately his 'good faith,' in filing under Chapter 13.")(emphasis added).

Even if one accepts the Debtors' testimony that their intent is focused on the benign goal of saving their home rather than the forbidden goal of frustrating and avoiding Countrywide's remedies, the evidence does not support a finding that there has been a "substantial change" in circumstances. Such a change might negate the negative side of the equation or exonerate their past performance as an indicator of bad faith. That showing has not been made in this case, as demonstrated by the following facts: (a) Compared to their second case, the Debtors' current income is actually lower than it was projected at that time,

and although those projections seemed wildly optimistic and overstated, that case was confirmed without objection; (b) A close examination of the income and expenses in the current budget reveals that if one excludes projected overtime in Mr. Robinson's employment, the Debtors' income in this case is not significantly different than in the first case; and (c) Since Mr. Robinson has entered a relatively new job, projecting substantial overtime over the five years that this case would remain pending is, unfortunately, speculative. *See* Collier on Bankruptcy, ¶ 1329.03, at 1329-6 (stating that, within the context of a modification of a Chapter 13 plan under Section 1329, a substantial change occurs when there are "changes in the debtor's circumstances that substantially affect the ability to make future payments").

The final and most significant factor weighing against the Debtors is that although Mr. Robinson has been at work in his present job since April 2005 and has steadier income than the lawn care service he previously attempted to operate, the Debtors have made only two regular monthly payments between April and the dismissal of case two. The last regular monthly payment was made on July 26, 2005. Accordingly, notwithstanding steady income from Mr. Robinson's new job, the Debtors have not timely performed their obligations to make mortgage payments to Countrywide and did not make any visible effort to rescue their second case, which was not dismissed until October. This performance history negates any general testimony as to the Debtors' good faith and the feasibility of the current plan. The Debtors appear sincere, hard-working, and earnest in their desire to make yet another effort to reorganize their finances and save their home. Their previous sincere

efforts failed, however, and there is insufficient evidence to demonstrate that anything has fundamentally changed.

For the foregoing reasons, I conclude that the Debtors have not made the requisite showing by clear and convincing evidence that this case was filed in good faith, including any showing of a substantial change in circumstances since either of their prior cases were filed. The presumption imposed by Section 362(c)(4)(D) on the Debtors has not been overcome and produces an unfortunate result for the Debtors. It is a result, however, that this Court must uphold.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 23rd day of December, 2005.